**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | | |
|---|---|---|
| AMERICAN BUILDERS INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 9:23-cv-01277-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| SEA CASTLE CUSTOM HOMES, LLC, | ) | |
| and WILLIAM B. FUCCILLO, JR., | ) | |
| as *personal representative of the Estate* | ) | |
| *of William B. Fuccillo, Sr.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The following matter is before the court on defendant William B. Fuccillo, Jr.'s ("Fuccillo") motion for partial summary judgment, ECF No. 18. Ultimately, the court finds that it lacks subject matter jurisdiction over this case and, accordingly, dismisses the case without prejudice. See Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

## I.   BACKGROUND

This declaratory judgment action stems from an underlying construction defect case currently pending in the Beaufort County Court of Common Pleas, Fuccillo v. Sea Castle Custom Homes, LLC, No. 2020-CP-07-00154 (Beaufort Cnty. Ct. C.P. filed Jan. 24, 2020) (the "Underlying Action" or Fuccillo). See ECF No. 1, Compl. ¶ 1. Fuccillo's father, William B. Fuccillo, Sr., originally brought the Underlying Action on January 24, 2020. See Compl., Fuccillo, No. 2020-CP-07-00154. Fuccillo's father alleged that he contracted with Sea Castle Custom Homes, LLC ("Sea Castle") to build a residential

home (the "House") on Hilton Head Island in April 2016.  See Amend. Compl. ¶ 3, Fuccillo, No. 2020-CP-07-00154.

Fuccillo's father claimed to have noticed several defects in the House that he said were caused by Sea Castle's faulty materials and workmanship and that he notified Sea Castle of these defects both before and after moving into the House.  Id. ¶¶ 5–8.  He asserted that, despite his protest, Sea Castle failed to adequately cure the deficiencies.  Id. ¶¶ 6–7.  Specifically, he said that the House was unsafe, uninhabitable, and riddled with leaks, air infiltration, and other defects that caused extensive damage to the House over time due to repeated exposure to the elements.  Id. ¶¶ 14–16.  As a result, he claimed that the House lost significant value and that he was forced to spend more money to investigate and fix the problems.  Id. ¶ 14.

Based on these assertions, Fuccillo's father amended his complaint to include allegations against both Sea Castle and Sea Castle's subcontractors.[1]  See Amend. Compl., Fuccillo, No. 2020-CP-07-00154.  In the amended complaint, he specifically asserted three causes of action against Sea Castle: (1) negligence/gross negligence, (2)

---

[1] The subcontractors listed in Fuccillo's Amended Complaint are Shaw Custom Metal Fabrication, LLC ("Shaw"); Carmelo Flores ("Flores"); and Handy Manny's Landscapes & Services, LLC ("Manny's").  See Amend. Compl. 1, Fuccillo, No. 2020-CP-07-00154.  Shaw was dismissed from the Underlying Action on January 7, 2022.  Underlying Action, Order Dismissal Without Prejudice (Jan. 7, 2022).  However, Shaw is now a party in the Underlying Action once again by virtue of third-party claims recently asserted by Sea Castle.  See 3d Amend. Answer ¶ 94, Fuccillo, No. 2020-CP-07-00154.  Altogether, Sea Castle asserts five causes of action against various subcontractors: (1) negligence, (2) breach of warranty, (3) breach of contract, (4) equitable indemnification, (5) contribution.  Id. ¶¶ 66–112.  Sea Castle pursues these causes of action as crossclaims against Flores and Manny's and as third-party claims against Shaw; Roofing and Wood Repairs, Inc.; Issac Miguel Reyes; Hilton Head Painting; Hernandez Construction, LLC; L&G Construction Group, LLC; Palmetto Pools & Spa MR, LLC; Torres Stucco, LLC; ABS Fencing LLC; and ABS Fencing & Screen, LLC.  Id.

breach of express and implied warranties, and (3) breach of contract,[2] and he sought
punitive damages, actual damages, consequential damages, and attorney's fees. See
Amend. Compl. ¶¶ 17–34, Fuccillo, No. 2020-CP-07-00154. Sadly, Fuccillo's father
died on June 17, 2021, and Fuccillo, as personal representative of his father's estate, was
substituted as the plaintiff in the Underlying Action on February 22, 2022. Consent
Order Substitution Personal Representative Deceased Pl., Fuccillo, No. 2020-CP-07-
00154.

At the time of the events giving rise to the Underlying Action, Sea Castle was
covered under multiple successive commercial general liability ("CGL") insurance
policies (the "Policies") issued by American Builders Insurance Company ("Builders").[3]
See ECF Nos. 1-5; 18-4 at 3; 18-6 at 3. Accordingly, Sea Castle forwarded a copy of the
complaint in the Underlying Action to Builders on February 11, 2020. See ECF Nos. 18-
4 at 2; 18-6 at 2. Builders responded by issuing two reservation of rights ("ROR") letters
on February 12, 2020, and March 26, 2020. ECF Nos. 18-4; 18-6.[4] In these letters,
Builders stated that it would provide defense for Sea Castle in the Underlying Action but

---

[2] Fuccillo also asserted two causes of action against Shaw, Flores, and Manny's:
(1) negligence/gross negligence and (2) breach of implied warranties. See Amend.
Compl. ¶¶ 17–30, Fuccillo, No. 2020-CP-07-00154.

[3] The specific Policies and their respective coverage dates are as follows:
1. PKG 0172523 02 (January 12, 2016 – January 12, 2017)
2. PKG 0172523 03 (January 12, 2017 – January 12, 2018)
3. PKG 0172523 04 (January 12, 2018 – January 12, 2019)
4. PKG 0172523 05 (January 12, 2019 – January 12, 2020)
5. PKG 0172523 06 (January 12, 2020 – January 12, 2021)
ECF Nos. 18-4 at 2; 18-6 at 2. These Policies are nearly identical, see generally ECF No.
1-5, and neither party argues that the coverage issues at stake in Fuccillo's motion are
affected by the limited extent to which they differ.

[4] It appears that the ROR letters were intended to have been attached as Exhibits 5
and 6 to Fuccillo's motion but were mistakenly attached as Exhibits 4 and 6. See ECF
Nos. 18-4; 18-6.

maintained that certain provisions in the Policies might bar coverage for damages awarded against Sea Castle in that lawsuit.  ECF Nos. 18-4 at 2; 18-6 at 2.

On March 31, 2023, Builders filed this declaratory judgment action against both Fuccillo and Sea Castle.[5]  See ECF No. 1, Compl.  In doing so, Builders seeks guidance on the extent to which it is obligated to indemnify Sea Castle for damages that might be awarded in the Underlying Action.  See id. ¶ 23.  Thereafter, on September 22, 2023, Fuccillo filed a motion for partial summary judgment.  ECF No. 18.  Builders responded in opposition on October 3, 2023, ECF No. 21, and Fuccillo replied on October 27, 2023, ECF No. 25.   On November 14, 2023, the court cancelled a hearing on the motion and requested additional briefing from the parties on whether it should exercise jurisdiction over this case.  See ECF No. 27.  Since then, both parties filed supplemental briefing on the court's jurisdictional questions.  ECF Nos. 30; 31.  As such, the matter is now fully briefed.

## II.  STANDARD

### A.  Summary Judgment

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

---

[5] Sea Castle has yet to notice an appearance in the declaratory judgment action.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor. Id. at 255.

### B.  Ripeness and Article III Jurisdiction

Article III of the United States Constitution limits this court's jurisdiction to "Cases" and "Controversies" between parties. See U.S. Const. art. III, § 2. "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341 (2006). Whether a court is properly exercising its jurisdiction over a matter depends on, among other things, whether the matter is ripe for judicial review. Id. at 352. "To determine whether the case is ripe, we balance the fitness of the issues for judicial decision with the hardship to the parties of withholding court consideration." Miller v. Brown, 462 F.3d 312, 319 (4th Cir. 2006) (internal quotation marks omitted) (quoting Franks v. Ross, 313 F.3d 184, 194 (4th Cir. 2002)). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" Texas v. United States, 523 U.S. 296, 300 (1998) (quoting Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580–81 (1985)). The ripeness requirement's "basic rationale is to prevent the courts, through avoidance of premature

5

adjudication, from entangling themselves in abstract disagreements." Abbott Lab'ys v. Gardner, 387 U.S. 136, 148 (1967), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977).

Ripeness is a question of the court's subject matter jurisdiction. South Carolina v. United States, 912 F.3d 720, 730 (4th Cir. 2019). A motion to dismiss under Rule 12(b)(1) represents a challenge to the court's subject matter jurisdiction. Arbaugh v. Y & H Corp., 546 U.S. 500, 507 (2006). Pursuant to Rule 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Lack of subject-matter jurisdiction may be raised at any time by a party or the court. See Arbaugh, 546 U.S. at 506-07. "When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

In deciding such an issue, "the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." In re KBR, Inc., Burn Pit Litig., 744 F.3d 326, 333 (4th Cir. 2014) (internal quotation marks omitted). When determining whether subject matter jurisdiction is present, the court applies the standard applicable to motions for summary judgment where the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. Richmond, 945 F.2d at 768 (citing Trentacosta v. Frontier Pac. Aircraft Indus., 813 F.2d 1553, 1559 (9th Cir. 1987)). "The moving party should prevail only if the material

jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." Id.

### C.  The Declaratory Judgment Act

The Declaratory Judgment Act states:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201.  "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995).  In the context of a declaratory judgment action, the Supreme Court concluded in Brillhart v. Excess Insurance Co. of America, 316 U.S. 491, 494–95 (1942), and later in Wilton, 515 U.S. at 288, that a district court's substantial discretion permits it to stay or dismiss an action seeking a declaratory judgment in favor of an ongoing court case.  Such discretion, however, "is not unbounded," and a district court may refuse to entertain a declaratory judgment action only "for good reason." Nautilus Ins. Co. v. Winchester Homes, Inc., 15 F.3d 371, 375 (4th Cir. 1994) (internal quotation marks omitted) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937)), overruled in part on other grounds by Centennial Life Ins. Co. v. Poston, 88 F.3d 255 (4th Cir. 1996).

A court should generally exercise jurisdiction over a declaratory judgment claim "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Quarles, 92 F.2d at 325.

7

Liability insurance agreements often obligate the insurer to pay both judgments and settlements awarded against the insured. <u>Nautilus</u>, 15 F.3d at 375–76. Consequently, early resolution of disputes over insurance obligations, even in advance of judgments against the insured, help the parties by "designat[ing] the bearer of ultimate liability in the underlying cases and hence the bearer of the onus and risks of settlement." <u>Id.</u> at 376 (internal quotation marks and citations omitted).

Nevertheless, there are additional considerations for the district court, beyond just the <u>Quarles</u> factors, when the related proceeding is pending in state court. <u>Id.</u> In such instances, the federal court must be further guided by concerns of "federalism, efficiency, and comity." <u>Penn-Am. Ins. Co. v. Coffey</u>, 368 F.3d 409, 412 (4th Cir. 2004) (internal citation omitted). Courts often look to four factors when making this determination:

> (i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; [ ] (iii) whether permitting the federal action to go forward would result in unnecessary "entanglement" between the federal and state court systems, because of the presence of "overlapping issues of fact or law"[; and (iv)] whether the declaratory judgment action is being used merely as a device for "procedural fencing"—that is, "to provide another forum in a race for res judicata" or "to achiev[e] a federal hearing in a case otherwise not removable."

<u>Nautilus</u>, 15 F.3d at 377 (first and third alterations in original) (citations omitted). As noted by the Fourth Circuit, "a district court should not treat the [<u>Nautilus</u>] factors as a mechanical checklist, but rather should apply them flexibly in light of the particular circumstances of each case." <u>VRCompliance LLC v. HomeAway, Inc.</u>, 715 F.3d 570, 573 (4th Cir. 2013) (internal quotation marks omitted).

### III.  DISCUSSION

To understand the context of the parties' arguments on the court's jurisdiction, the court must briefly review the parties' arguments over Fuccillo's motion for summary judgment.  In essence, Fuccillo claims that the coverage issues at stake in this case are sufficiently ripe for the court to rule on his motion for summary judgment even before the jury makes factual findings in the Underlying Action.[6]  ECF No. 25 at 2–4.  In response, Builders argues that the motion should be denied because, among other reasons, the issue of whether it is obligated to cover damages awarded in the Underlying Action is not ripe without findings from the jury in the Underlying Action.[7]  ECF No. 21 at 2–11.

Despite these arguments on whether this case is ripe for purposes of summary judgment, the parties apparently swapped positions for purposes of their arguments on the court's jurisdiction.  On the one hand, Builders argues that this case is sufficiently ripe for the court to retain Article III jurisdiction even without factual findings in the Underlying Action.  ECF No. 30 at 3–6.  It therefore argues that the court has Article III jurisdiction and requests that the court exercise its discretionary jurisdiction over this case.  Id. at 3–10.  Yet it maintains (perhaps paradoxically) that the court simultaneously lacks sufficient factual findings to rule on, at least some of, the indemnity issues raised in

---

[6] Fuccillo specifically argues that if he were to win punitive damages, attorney's fees, or loss of use damages in the Underlying Action, Builders would be obligated to cover those damages under the Policies, and he seeks a determination that Builders's obligation to cover any damages awarded in the Underlying Action is not barred by the Policies' "Professional Services" Exclusion.  ECF No. 18 at 5–20.

[7] Builders urges that without such factual determinations, this court is deprived of sufficient information to rule on, at least some of, the coverage issues presented in Fuccillo's motion.  ECF Nos. 21 at 2–11; 30 at 1 n.1.  If, however, the motion is ripe, Builders maintains that the motion should be denied based on various alternative arguments specific to each coverage issue.  ECF No. 21 at 2–11.

9

Fuccillo's motion for summary judgment.  <u>ECF No. 30 at 1</u>, 3–6, 9–10 & n.1.

Specifically, Builders argues that factual determinations are necessary before this court

can determine whether the Policies would cover either punitive damages or full loss

of use damages awarded in the Underlying Action, but it concedes that the court could make

a determination on whether the Polices cover an attorney's fee award without factual

determinations from the Underlying Action.  ECF No. 30 at 1 n.1.

     Builders thus offers an interesting solution in the face of its antithetical ripeness

determinations: it asks the court to retain jurisdiction over the entire declaratory judgment

action, to rule on the coverage issues that do not require factual determinations in the

Underlying Action (specifically the coverage issues related to an attorney's fee award),

and to stay consideration of the other coverage issues raised in Fuccillo's motion for

summary judgment until after the jury has made factual determinations in the Underlying

Action.  <u>Id.</u> at 1, 9–10 & n.1.  In contrast, Fuccillo simply argues that the court should

decline to exercise its discretionary jurisdiction under the Declaratory Judgment Act to

dismiss the case.  ECF No. 31 at 6.

     Ultimately, for reasons to be explained in more detail below, the court finds that

this declaratory judgment action is unripe without factual findings in the Underlying

Action.  <u>See</u> <u>Trustgard Ins. Co. v. Collins</u>, 942 F.3d 195, 199–204 (4th Cir. 2019).

Consequently, this case will be dismissed both because the court lacks Article III

jurisdiction and because the court should not exercise its discretionary jurisdiction in this

case.[8] See id.  The court will, therefore, explain its reasoning on both grounds for dismissal, starting with Article III considerations.

### A. The Court's Article III Jurisdiction

In essence, Builders argues that there is a "substantial controversy of sufficient immediacy" between the parties of this declaratory judgment action for the court to maintain Article III jurisdiction.  ECF No. 30 at 3.  Builders's argument focuses primarily on the Fourth Circuit's decision in Trustgard, 942 F.3d at 199.  ECF No. 30 at 3–6. Much like this case, Trustgard was a declaratory judgment action brought by an insurance company to determine whether either an insurance policy or endorsement[9] required an "insurer to pay any judgment against [the insured] that might result from [an] ongoing state-court proceeding[]."  Id. at 197.  Without considering whether to exercise

---

[8] When a Declaratory Judgment Act case is unripe, it must be dismissed, but it is unclear in this circuit whether the court must dismiss the case under Article III or whether the court should dismiss the case by declining to exercise its discretionary jurisdiction under the Declaratory Judgment Act.  See id. at 204 (Harris, J., concurring in judgment). In Trustgard, the majority suggested that such cases should be dismissed for either (or both) reasons.  See id. at 200–01 (majority opinion).  The concurrence, however, found that the majority should not have opined on the constitutional standing question and instead should have dismissed exclusively because of prudential concerns with exercising jurisdiction.  See id. at 204–05 (Harris, J., concurring in judgement).

While this court will not attempt to resolve that dispute today, it primarily focuses its analysis on Article III for two reasons.  First, while the court could decline to exercise discretionary jurisdiction without first ruling on whether it has Article III jurisdiction, questions over whether the court has Article III jurisdiction must be considered when deciding whether the court should exercise discretionary jurisdiction.  See id. at 202 (majority opinion).  Second, courts in this district have routinely dismissed unripe declaratory judgment cases, like the one at bar, on constitutional grounds.  See, e.g., FCCI Ins. Co. v. Island Pointe, LLC, 309 F. Supp. 3d 399, 406 (D.S.C. 2018); Scottsdale Ins. Co. v. Thomas, 2020 WL 3548266, at *3 (D.S.C. June 30, 2020).

[9] If the endorsement applied, "the insurer [was] obligated to pay a judgment against the insured."  Id. at 198.  Thus, while the endorsement was "not technically insurance," the difference between the endorsement and the insurance policy is not important for the court's present jurisdictional purposes.  See id.

jurisdiction, the district court granted summary judgment in favor of the insurance company and ruled that neither the insured's policy nor endorsement applied to damages awarded in the underlying action.  Id. at 198.  On appeal, the Fourth Circuit determined that the district court abused its discretion when it implicitly accepted jurisdiction.  Id. at 204.

Through much of the Fourth Circuit's opinion, the court questioned whether it had Article III jurisdiction over the case.  Id. at 199–201.  In doing so, the court specifically noted that the insurance company's "alleged injury—that it might have to guarantee a future judgment against [the insured]—is of a hypothetical and contingent nature: the injury may or may not occur depending on the outcome of the state lawsuit." Id. at 200.  As the court explained, if the insured were to prevail in the state court lawsuit after the federal court had already ruled in the coverage issues in the declaratory judgment action, the federal court's decision in the declaratory judgment action would have no effect.  Id.  In other words, by ruling in the declaratory judgment action before the state court made a liability determination, the federal court "risk[ed] issuing an advisory opinion."  Id.  Such a ruling would certainly be unconstitutional, as the bar against federal courts issuing advisory opinions "is one of the most long-standing and well-settled jurisdictional rules."  Id.

Despite the concerns the Fourth Circuit raised over whether it had Article III jurisdiction in Trustgard, it ultimately declined to reach the question.  Id. at 201.  Instead, the court went on to analyze the case under the Nautilus factors and determined that the district court should have declined to exercise its discretionary jurisdiction over the case pursuant to the Declaratory Judgment Act.  Id. at 201–04.

Builders reads the Fourth Circuit's discussion of Article III jurisdiction in Trustgard as a conclusion "that any opinion on indemnification is inherently advisory so long as a defense verdict remains possible." ECF No. 30 at 4. Thus, if Builders is correct and this court were to follow the reasoning in Trustgard, Builders's declaratory judgment action would surely have to be dismissed.

Yet Builders urges against that result. See id. at 4–5. It argues that the Fourth Circuit's analysis on Article III jurisdiction should not be followed because it is dicta and inconsistent with the Supreme Court's decision in Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270 (1941) and the Fourth Circuit's prior precedent in A/S J. Ludwig Mowinckles Rederi v. Tidewater Construction Corp., 559 F.2d 928 (4th Cir. 1977). Builders characterizes the Supreme Court's decision in Maryland Casualty as standing for the proposition that an insured's tort victim may participate in a declaratory judgment action over insurance coverage even before a verdict is reached in the underlying tort action. ECF No. 30 at 4. According to Builders, the Court articulated a test for determining whether the tort victim has Article III standing in a declaratory judgment action: "the question in each case is whether the facts and circumstances show that there is substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. (quoting Md. Cas. Co., 312 U.S. at 273).

Builders then argues that the Fourth Circuit applied the same test in Mowinckles and held that "[w]hether an indemnification issue is ripe for adjudication depends on the facts and circumstances of the case under consideration." 559 F.2d at 932. Thus, Builders asserts that this case is ripe under the Maryland Casualty "facts and

13

circumstances" test for two reasons.  ECF No. 30 at 5.  First, it says that there is a

substantial controversy between itself and Sea Castle over who is going to have to pay a

possible $600,000 to $700,000 judgment in the Underlying Action.  Id.  Second, it claims

that the indemnity issues in the declaratory judgment action, unlike the factual questions

in the Underlying Action are purely legal: "whether, or to what extent, certain provisions,

exclusions and endorsements contained within the Policies exclude coverage in the

Underlying Action."  Id. at 5.

       The court rejects Builders argument for two reasons.  First, Builders

misapprehends the Fourth Circuit's decision in Mowinckles.[10]  As Builders points out,

the Fourth Circuit determined that adjudication of the declaratory judgment action in

Mowinckles was not ripe based on the "facts and circumstances of the case."  Id. at 932.

However, the very first fact the court considered in reaching this determination was that

"there ha[d] been neither a determination of liability nor a settlement in any of the

[underlying] personal injury or wrongful death actions."  Id.  As a result, the Fourth

Circuit could not tell whether the underlying actions would result in liability at all, and

making factual determinations for the purpose of the declaratory judgment action could

have led to an inconsistent result with whatever the factual determinations were

eventually reached in the underlying liability actions.  Id.  Thus, without a liability

---

[10] The dispute giving rise to that case began when a vessel collided with a pier, killing and injuring multiple workers.  Mowinckles, 559 F.2d at 929–30.  The injured worker and the estates of those killed sued the owner of the vessel and the builder of the pier in multiple underlying lawsuits in state and federal court.  Id. at 930.  However, before a judgment was reached in those cases, the vessel owner brought a separate federal declaratory judgment action to determine if the pier builder or pier owner would have to indemnify for damages that might be awarded in the underlying actions.  Id.  On appeal, the Fourth Circuit was asked to determine whether the district court erred in ruling on the indemnity question before the underlying cases went to trial.  Id. at 931.

determination in the underlying actions, the federal declaratory judgment action was unripe. Id. at 932–33.

In other words, the Mowinckles decision makes clear that "[a]n important factor in considering ripeness is whether resolution of the tendered issue is based upon events or determinations which may not occur as anticipated," such as a liability determination in a pending underlying action. Id. at 932–33. Consequently, while Builders is correct that the question of whether this declaratory judgment action is ripe depends on the "facts and circumstances" of this case, Builders misconstrues which facts and circumstances are most relevant to that determination. See id.

Indeed, Builders may be correct that the parties of this declaratory judgment action are at odds over Builders's duty to indemnify. See Nautilus, 15 F.3d at 377 ("There is no question but that the declaratory relief sought would 'serve a useful purpose in clarifying and settling the legal relations in issue,' and that it would 'terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" (quoting Quarles, 92 F.2d at 325)). However, even if this is true—and even if Builders is correct that, at least some of, the indemnity issues could be decided without factual findings in the Underlying Action—the Fourth Circuit's decision in Mowinckles shows that the lack of a judgment in the Underlying Action is an extremely important factor indicating that this declaratory judgment action is not ripe. See Mowinckles, 559 F.2d at 932–33.

Second, much like in both <u>Trustgard</u> and <u>Mowinckles</u>, this declaratory judgment action concerns Builders's duty to indemnify, not its duty to defend.[11]  This is an important distinction for purposes of the court's jurisdiction.  Under South Carolina law, the question of whether a duty to defend is triggered by an underlying action is based on the allegations in the complaint, while the question of whether the duty to indemnify is triggered is based on evidence found by the factfinder.  See <u>Ellett Bros., Inc. v. U.S. Fid. & Guar. Co.</u>, 275 F.3d 384, 388 (4th Cir. 2001) (applying South Carolina law).  Thus, courts in this district have routinely held that declaratory judgment actions over indemnification should usually be dismissed when findings of fact have yet to be made in an underlying suit.  See <u>id.</u> ("Because no findings of fact have been made in the four lawsuits against Ellett, the indemnity claim is not ripe and the district court correctly dismissed it."); <u>FCCI Ins. Co. v. Island Pointe, LLC</u>, 309 F. Supp. 3d 399, 406 (D.S.C. 2018) ("No factual findings have been made in the underlying lawsuit, so a determination of whether any party has a duty to indemnify is not ripe for this Court's consideration."); <u>Scottsdale Ins. Co. v. Thomas</u>, 2020 WL 3548266, at *3 (D.S.C. June 30, 2020)

---

[11] Admittedly, the first paragraph of Builders's complaint states that Builders seeks a declaration that it has "no duty to <u>defend or indemnity</u>" Sea Castle in the Underlying Action.  Compl. ¶ 1 (emphasis added).  However, this is the only mention of the duty to defend anywhere in the complaint, and the sole cause of action listed in the complaint is for a declaratory judgment on Builders's duty to indemnify.  <u>See id.</u> ¶¶ 22–42.  The court, therefore, interprets this case as presenting a question only over Builders's duty to indemnify and not its duty to defend.  <u>See id.</u>  This interpretation is seemingly confirmed by Builders's subsequent arguments over Fuccillo's motion for summary judgment and over the court's jurisdiction.  <u>See</u> ECF Nos. 21 at 1 ("The present insurance coverage action seeks a declaratory judgment that Builders <u>has no duty to indemnify</u>." (emphasis added)); 30 at 2–3 ("Plaintiff filed the instant declaratory judgment action requesting that the Court determine whether the claims against Sea Castle in the Underlying Action trigger <u>the duty of indemnity</u>, and to what extent, if any, <u>the duty to indemnify</u> is triggered." (emphasis added)).

("Irrespective of the scope of the duty to defend, the court cannot consider the duty to indemnify until there have been factual findings in the state court in the underlying action."); cf. Gen. Star Indem. Co. v. Condustrial, Inc., 2023 WL 388135, at *3 (D.S.C. Jan. 25, 2023) (declining to dismiss declaratory judgment action based on duty to defend because the Fourth Circuit's holding in Trustgard focused only on whether the ripeness of indemnity claims).

In sum, whether Builders will have to indemnify Sea Castle for a judgment awarded in the Underlying Action is completely contingent on whether such a judgment is awarded in the first place. See Mowinckles, 559 F.2d at 933. Until that happens, any decision from this court on the question of indemnification would be advisory. See id.; Trustgard, 942 F.3d at 200–01; see also Indem. Ins. Co. of N. Am. v. Schriefer, 142 F.2d 851, 853 (4th Cir. 1944) ("There could be no possible justification for dragging into the federal court the litigation of the issues pending in the state court, for the sake of obtaining a declaratory judgment as to a matter which will have no practical significance if the defendants prevail in the state court."). The court is certainly aware that a ruling on the indemnity issues would be helpful to the parties, but "practical value cannot overcome this fundamental limitation on [the court's] jurisdiction." Trustgard, 942 F.3d at 201. Therefore, the court finds that this case is unripe and dismisses it accordingly.[12]

---

[12] To be clear, even if Builders is correct that some of the indemnity issues in this declaratory judgment action are purely legal and could be ruled on without reference to factual findings in the Underlying Action, a ruling on those issues would still be an impermissible advisory opinion from this court. See Trustgard, 942 F.3d at 200–01; Mowinckles, 559 F.2d at 933. However, even if that were not the case, the court would reject Builders's proposal that the court rule on only a portion of the indemnity issues and stay its decision on the remainder pending resolution of the state court action. The court notes that courts in this district have generally rejected requests to stay indemnity issues until resolution of the underlying state lawsuits, instead favoring their dismissal, because

### B.  The Court's Discretionary Jurisdiction

Even if this court had Article III jurisdiction, it would still decline to exercise its discretionary jurisdiction over this case.  The third <u>Nautilus</u> factor requires this court to question "whether permitting the federal action to go forward would result in unnecessary 'entanglement' between the federal and state court systems, because of the presence of 'overlapping issues of fact or law.'"  <u>Nautilus</u>, 15 F.3d at 377 (quoting <u>Mitcheson v. Harris</u>, 955 F.2d 235, 239–40 (4th Cir. 1992)).  This factor comes down to whether the issues that will need to be decided by the factfinder in the underlying action overlap with those that will need to be resolved to determine the contractual issues presented in the declaratory judgment action. <u>See</u> <u>Penn-Am.</u>, 368 F.3d at 413–14.  In other words, for a district court to decline jurisdiction in a declaratory judgment action, it is not enough that there be unresolved factual issues in a pending state court action.  <u>See</u> <u>id.</u> at 414.  Instead, those unresolved factual issues must bear on the extent of the insurance company's contractual duty to indemnify.  <u>See</u> <u>id.</u>

Builders concedes that some of the indemnity issues in this declaratory judgment action will depend on pending factual determinations in the Underlying Action.  ECF No. 30 at 1, 9–10 & n.1.  The court agrees with this assessment and accordingly finds that there is a serious risk of overlapping factual issues between this action and the Underlying Action that would bear on Builders's duty to indemnify.  For instance, any determination by this court over whether Builders has a duty to indemnify for potential

---

the insurer may refile the action upon the state court's final decision.  <u>See e.g.</u>, <u>Scottsdale</u>, 2020 WL 3548266, at *3 (rejecting request to stay case pending state court decision because "after there have been factual findings in the state court in the underlying action, [the insurer] may file an action seeking a declaration on the duty to indemnify issue").

punitive damages in the Underlying Action would require substantial discovery into the nature of Fuccillo's alleged injuries and Sea Castle's intent.  See Harleysville Grp. Ins. v. Heritage Cmtys., Inc., 803 S.E.2d 288, 301–03 (S.C. 2017).[13]  Doing so would almost certainly overlap with the factual undertaking to be conducted in the Underlying Action in state court, and this factor substantially mitigates against this court exercising its discretionary jurisdiction.  See id.; Trustgard, 942 F.3d at 202–04; Med. Mut. Ins. Co. of N.C. v. Littaua, 35 F.4th 205, 212 (4th Cir. 2022) (explaining that the risk of overlapping factual questions weighs against exercising jurisdiction when factual overlap with the

---

[13] In construction defect cases, the standard CGL policy language covers punitive damages under certain circumstances.  See id.  In Heritage Communities, the South Carolina Supreme Court found that this language obligated an insurer to cover punitive damages awarded in an underlying case when the jury awarded those damages "as a result of progressive water intrusion."  Id. at 301; see also Crossmann Cmtys. of N.C., Inc. v. Harleysville Mut. Ins. Co., 717 S.E.2d 589, 593 (S.C. 2011).  Like in Heritage Communities, Fuccillo has alleged damages caused by progressive water intrusion in the Underlying Action.  See Amend. Compl. ¶ 15, Fuccillo, No. 2020-CP-07-00154 ("[T]he construction defects set forth herein caused occurrences in the form of leaks, air infiltration, defects, and failures within the building envelope which are not readily apparent to one examining the exterior surface thereof."); see also ECF No. 25 at 6 ("[Builders] cannot deny that the Fuccillo residence was damaged by progressive water intrusion and mold infestation.").  However, unlike in Heritage Communities, no jury has yet found that the alleged damages giving rise to the Underlying Action were caused by progressive water intrusion.  Without such a determination, this court cannot know whether Builders is contractually obligated to cover Sea Castle's potential punitive damages under the Policies.  See Heritage Cmtys., 803 S.E.2d at 301.

Likewise, the South Carolina Supreme Court also held that the question of whether a standard CGL "expected or intended" exclusion barred indemnification for punitive damages is based on the intent of the insured.  Id. at 302.  "For an act to be excluded from coverage under the policy exclusion for losses 'expected or intended from the standpoint of the insured,' . . . 'not only the act causing the loss must have been intentional but [] the results of the act must also have been intended.'"  Id. (second alteration in original) (quoting Miller v. Fid.-Phoenix Ins. Co., 231 S.E.2d 701, 702 (S.C. 1977)).  Moreover, "[t]hese questions of the insured's intent are factual in nature" and are based on factual findings in the underlying action.  Id.  Thus, without the benefit of the jury's findings in the Underlying Action, this court is without the necessarily factual determinations to decide whether the conduct giving rise to punitive damages was "expected or intended."  See Heritage Cmtys., 803 S.E.2d at 302.

underlying action, though not certain, is "present and significant"). This is especially true given the current lack of discovery over these factual questions in this court. See Trustgard, 942 F.3d at 203 ("We are particularly concerned about the court's entanglement with those state-court issues given how thin and ambiguous the record was at the time of the district court's analysis.").

Moreover, the second Nautilus factor—"whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending," Nautilus, 15 F.3d at 377,—favors declining jurisdiction over all of the indemnity issues presented in this case for similar reasons. This factor focuses on judicial efficiency and comity. See Mitcheson, 955 F.2d at 239. Of course, it would be very inefficient for this court to exercise jurisdiction when "a federal declaration that an insurer had no duty to indemnify could be rendered totally unnecessary by a subsequent state verdict for the insured in the underlying state action." Id.

There are added efficiency concerns when the indemnity issues overlap with factual determinations relevant in the state court action. Id. "It hardly husbands scarce judicial resources to allow separate suits stemming from the same overall controversy and involving overlapping issues to proceed simultaneously on parallel tracks." Id. This is especially true in cases such as this, in which resolution of the declaratory judgment action would require "duplicative discovery on issues already being addressed in state court." Trustgard, 942 F.3d at 204. Rather, judicial resources will be much more efficiently spent by allowing the state court to proceed with factual findings in the Underlying Action before this court rules on the indemnity questions presented in this case. See id.; Goodville Mut. Cas. Co. v. Doby, 2020 WL 2602203, at *3 (E.D. Va. May

21, 2020) ("While the Court in a declaratory judgment action may make its own evidentiary findings, the state court may more efficiently do so with more extensive discovery and with a jury as the fact finder."); see also Schriefer, 142 F.2d at 853 (affirming district court's dismissal of a declaratory judgment action when the indemnity questions could just as easily be adjudicated "after the termination of the state court litigation as now, if the defendants do not prevail").

Beyond that, Builders may be correct that some of the indemnity issues, such as whether Builders would have to cover an attorney's fee award, are "purely legal issues" and could be resolved without factual findings in the Underlying Action. ECF No. 30 at 1. Yet even if that is the case, it would still be inefficient for the court to rule on those issues at this time if the court could not settle all the indemnity questions at once. See Mitcheson, 955 F.2d at 239 ("This court has long recognized that it makes no sense as a matter of judicial economy for a federal court to entertain a declaratory action when the result would be to 'try a controversy by piecemeal, or to try particular issues without settling the entire controversy.'" (quoting Quarles, 92 F.2d at 325)). Therefore, if the court were to decline to exercise its discretionary jurisdiction over the indemnity issues requiring factual findings from the jury in the Underlying Action, it would similarly decline jurisdiction over any indemnity issues which would not require such findings.

As such, the possibility of overlapping factual determinations between the state and federal courts and the interests of judicial efficiency strongly dictate against this court exercising discretionary jurisdiction in this case.[14] See Trustgard, 942 F.3d at 204.

---

[14] The other two Nautilus factors do not "play[] a particularly important role" in the court's analysis in this case. Penn.-Am., 369 F.3d at 414. The first Nautilus factor is not relevant when, as in this case, the contractual coverage issues will not be decided in

This is especially true given the serious questions over this court's Article III jurisdiction. See id. at 202 ("[C]ourts should exercise their discretionary jurisdiction with caution when doing so would raise serious questions about Article III jurisdiction, as this case does."). Consequently, even if this court did have Article III jurisdiction, it would still decline to exercise its discretionary jurisdiction over this case and would dismiss the case accordingly.

## IV. CONCLUSION

For the foregoing reasons, this case is **DISMISSED** without prejudice.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**January 4, 2024**
**Charleston, South Carolina**

---

the pending state court case and when the insurance company is not a party to the state court case, especially when the "state law issues are standard and 'unlikely to break new ground.'" See id. (quoting United Capitol Ins. Co. v. Kapiloff, 155 F.3d 488, 494 (4th Cir. 1998). Additionally, Fuccillo concedes that there is no evidence of "procedural fencing." ECF No. 31 at 6. Thus, the fourth Nautilus factor is similarly irrelevant to the court's analysis. See Penn-Am., 368 F.3d at 414.